IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KRYSTAL BERRY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-17-2629 |
| | § | |
| ALBIN GOLLA AND MISSIONARIES | § | |
| OF THE COMPANY OF MARY, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

After the court granted summary judgment for the defendant, the Missionaries of Mary, Krystal Berry sought reconsideration, arguing in part that the denial of her Rule 56(d) motion prevented her from discovery needed to frame a response. (Docket Entry Nos. 25, 29, 34). The court granted the motion to the extent of allowing Berry to depose Father Matthew Considine, Brother Golla's supervisor at the Missionaries of Mary, and to supplement the summary judgment record. (Docket Entry No. 42). Berry took the deposition and submitted as additional evidence Father Considine's deposition and photos of Brother Golla attached as exhibits from the deposition arguing that Considine's testimony supports her motion to reconsider summary judgment. (Docket Entry No. 43). The Missionaries respond by arguing that the court should uphold its prior ruling granting summary judgment in their favor. (Docket Entry No. 46). Based on a careful review of the supplemental evidence, briefing, and the applicable law, the motion for reconsideration is denied.

The Federal Rules of Civil Procedure do not formally recognize a motion to reconsider. *See St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997) ("[T]he Federal

1

Rules of Civil Procedure do not recognize a general motion for reconsideration."). Motions to reconsider are treated as motions to alter or amend a judgment under Federal Rule of Civil Procedure 59(e), or motions for relief from judgment under Rule 60(b), depending on when the motion is filed. *Demahy v. Schwarz Pharm. Inc.*, No. 11-31073, 2012 WL 5261492, at *2 n.2 (5th Cir. Oct. 25, 2012) (citing *Tex. A & M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 400 (5th Cir. 2003)). A motion for reconsideration is considered under Rule 59(e) if it is filed within 28 days of the court's ruling, and under Rule 60(b) if it is filed after that. *Demahy*, 2012 WL 5261492, at *2 n.2 (citing *Tex. A&M*, 338 F.3d at 400). This motion is considered under Rule 60(b) because it was filed more than 28 days after the court's May 3, 2017 order.

Rule 60(b) of the Federal Rules of Civil Procedure sets out five bases for relief from a final judgment: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct of an adverse party; (4) the judgment is void; and (5) satisfaction, discharge, or release of the judgment. Fed. R. Civ. P. 60(b) (1)-(5). Rule 60(b)(6) also allows a court to relieve a party from a final judgment for "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6). Relief under Rule 60(b)(6) is only granted when it is not covered by the five enumerated grounds and when "extraordinary circumstances" are present. *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 747 (5th Cir.1995) (citations omitted). "The district court enjoys considerable discretion when determining whether the movant has satisfied any of these Rule 60(b) standards." *Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 347 (5th Cir.1991).

Rule 60(b) allows the trial court to "correct obvious errors or injustices." *Fackelman v. Bell*, 564 F.2d 734, 736 (5th Cir.1977). A party moving under Rule 60(b) must show "unusual or unique circumstances." *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 286 (5th Cir.1985). A motion to

2

reconsider may not be used to relitigate matters, raise arguments, or submit evidence that could have been presented before the judgment or order was entered. 11 WRIGHT & MILLER § 2810.1 at 127–28 (footnotes omitted). "A party seeking reconsideration must show more than disagreement with the court's decision and recapitulation of the same cases and arguments already considered by the court." *Texaco Exploration & Prod., Inc. v. Smackco, Ltd.*, No. Civ. A. 98–2293, 1999 WL 539548, at *1 (E.D. La. July 26, 1999) (citing *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995)). A motion for relief under Rule 60(b) is "not a substitute for the ordinary method of redressing judicial error—appeal." *Chick Kam Choo v. Exxon Corp.*, 699 F.2d 693, 696 (5th Cir.1983).

Berry moves under Rule 60(b)(6), arguing that it was manifestly unjust to grant summary judgment without allowing her to conduct discovery. Berry argues that the court prevented her from deposing Brother Golla when it disallowed an in-person deposition, but allowed written interrogatories, based on the 90-year-old monk's fragile health and the affidavit from his doctor stating that his cognitive abilities were diminished. (Docket Entry No. 19). She also alleges that she was scheduled to depose Father Matthew Considine in New York, but her flights were cancelled due to a winter storm. The court denied her motion to defer ruling on summary judgment and granted summary judgment for the Missionaries. She also states that she asked the court to allow her to depose Considine after summary judgment was granted, but that the court entered an order denying that request.[1] Berry argues that to deny her a continuance and to grant summary judgment

---

[1] The court is unclear what additional order Berry is referring to. She first raised the request to depose Father Considine in her motion for reconsideration, which she made within her response to the Missionaries' motion to certify a final judgment under Rule 54(b). (Docket Entry No. 34). Following those motions, the court held a hearing and allowed Berry to depose Considine. (Docket Entry No. 42).

3

before she could depose the only available witness on the course and scope of Brother Golla's duties was manifestly unjust.

The court properly denied Berry's Rule 56(d) motion because she did meet the applicable standard. (Docket Entry No. 35). Berry did not state the specific facts she needed that the depositions she sought were intended to uncover. *See Am. Family Life Assur. Co. v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) ("Nevertheless, non-moving parties requesting Rule 56(d) relief 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts.'") (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)). "Instead, the non-moving party must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'" *Id.* (quoting *Raby*, 600 F.3d at 561). By contrast, Berry alleged that the discovery period had not ended when the Missionaries sought summary judgment. This is insufficient to warrant a continuance. *See Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 756 (5th Cir. 2005) ("As a result, in a motion to extend the time to respond to a motion for summary judgment, the simple claim that discovery has not closed is insufficient."). Berry was not entitled to added discovery under Rule 56 and denying her Rule 56(d) motion was proper. *Id.* ("Rule 56 does not require that *any* discovery take place before summary judgment can be granted.") (emphasis in original) (citation omitted).

In addition, in their response to her motion for continuance, the Missionaries pointed out that Berry did not attempt to engage in meaningful discovery before they moved for summary judgment. (Docket Entry No. 24). Berry had from November 2017 until February 2018 to conduct discovery before the Missionaries filed their summary judgment motion, but she made few meaningful

4

attempts to do so, even though the Missionaries indicated at the Rule 16 conference their intent to seek summary judgment on the course and scope issue. Berry did not respond to requests in December 2017 and February 2018 for deposition dates. When the court denied Berry's request to depose Golla in December, it allowed her to conduct written discovery, which she did not pursue. Berry did not notice the deposition of Father Matthew Considine until two weeks after the Missionaries filed their motion for summary judgment. As of March 2018, the Missionaries had not received any written discovery requests from Berry. The court nonetheless granted Berry's motion to depose Considine and corrected the alleged injustice.

Berry continues to insist that Brother Golla was acting within the "course and scope of his employment" as defined by Texas Labor Code § 401.011(12). Berry asserted that the court failed to address that statute in its in Memorandum and Opinion. To the contrary, the court explained that neither party cited, and the court did not find, cases applying the interpretation of the Texas Labor Code from the worker's compensation context to a claim of vicarious liability. *See Painter v. Sandridge Energy, Inc.*, 511 S.W.3d 713 (Tex. App.—El Paso 2015, pet. denied) (explaining that the statutory provisions of the Labor Code are more liberally construed in favor of employees and do not dictate the outcome of a common-law negligence case). Berry's continued reliance on the statutory definition of "course and scope of employment" from the Texas Labor Code is neither new nor persuasive.

The proper test for "course and scope of employment" in the context of vicarious liability states that "an employer is liable for its employee's tort only when the tortious act falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Goodyear Tire & Rubber Co. v.*

5

*Mayes*, 236 S.W.3d 754, 757 (Tex. 2007) (quoting *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002)). "The employee's acts must be of the same general nature as the conduct authorized or incidental to the conduct authorized to be within the scope of employment." *Id.* "[I]f an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation." *Id.* (quoting *Minyard Food Stores*, 80 S.W.3d at 577). "The primary test for determining whether an employee is acting within the course and scope of employment is whether the employer has the right to direct and control the employee's performance at the time of the alleged negligent act." *Arbelaez v. Just Brakes Corp.*, 149 S.W.3d 717, 720 (Tex. App.—Austin 2004, no pet.) (citing *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 542 (Tex. 2003)).

Berry argues that Considine's deposition shows that Brother Golla was acting within the course and scope of his employment with the Missionaries when he hit Berry's car, because he was en route to attend mass. The Missionaries argue that Berry relies on selected deposition excerpts and ignores undisputed evidence that Brother Golla was not working for the Missionaries when he was in Houston and the accident occurred. Instead, he was in Houston for the personal reason of visiting his sick sister, and the fact that he was driving to a mass and even hoped to speak from the pulpit did not place his trip within the course and scope of his Missionaries employment.

Father Considine worked as the provincial superior for the Missionaries of Mary for twelve years. (Docket Entry No. 43-1 at 7). In that role, he took care of members, made work and other assignments, performed administrative duties, and was a Catholic priest. (*Id.* at 7–8). Considine testified that Golla was a Brother with the Missionaries and in that role was not allowed to deliver a sermon or solicit donations, both of which are reserved to priests or deacons. (*Id.* at 10, 34).

Father Considine testified that he was the only one who would have assigned Brother Golla any jobs or tasks, and that he did not send him to Houston to give a sermon or to do any other work on the Missionaries' behalf. (*Id.* at 44, 46). Brother Golla went to Houston for vacation and to visit his ailing sister. He was not permitted to give a sermon there or anywhere else. Even assuming the truth of his statement that he was going to mass and intended to give a sermon, he could not have done so as a Brother with the Missionaries without the permission of the local bishop, which he did not have. (*Id.* at 44–45).

Berry focuses on Considine's testimony that Golla was "authorized" to attend and help out at mass. The issue is that Berry focuses on an overly broad meaning of "authorize." In her logic, because Golla did not require authorization for the acts he was performing, the Missionaries of Mary actually authorized him to do so. Or, in other words, because the Missionaries did not specifially tell him he could not speak from the pulpit during his trip to Houston, they authorized him to do so. This argument is not persuasive. The photos that Berry includes show Golla standing with a book in his hands. (Docket Entry No. 43-2). According to Father Considine, these photos show Golla doing a scripture reading. (Docket Entry No. 43-1 at 11). When asked: "Did you, as the provincial superior of the Missionaries of the Company of Mary, authorize Brother Golla to do reading at mass?" Father Considine answered: "Not specifically because any adult confirmed Catholic or in some cases even grade school kids can serve that function, can do that thing at a Catholic mass, can do the readings." (*Id.* at 12). When asked "Would you agree with me, though, that this is part of his scope of duties that you would permit him to do as a brother of the Missionaries of the Company of Mary?" Considine responded: "I never thought of it that way. It was always known that he or anybody else probably who was in that room could have done that reading on that day." (*Id.* at 12).

7

In other words:

> Q: You never told him oh, you cannot do a reading, he was authorized to do that, though, right?
>
> A: Yes, sir.
> . . .
> Q: If he was acting as a eucharistic minister, he was authorized to do that, right?
> . . .
> A: Yes, but he was not – I did not give permission for those things because he did not need my permission to do those things.

(*Id.* at 13). Father Considine testified that Brother Golla was acting within the same authority as any member of the Catholic Church to give a reading or help out at a mass, but he was not acting at the specific direction or authorization, or on behalf of, the Missionaries:

> Q: Would you expect him if he went to mass in Houston or anywhere in the world where they were having mass, to offer his help to the priest that was going to celebrate mass?
>
> A: No, sir, I would not.
> . . .
> Most parishes that I know would have people that do this on a regular ordinary basis. So that in some cases it would be assigned and some cases they would use the people that they know right in that local parish community to serve these functions that a brother would not have any special place in doing those things.
>
> . . .
> Q: Would you agree with me that it would be well within Brother Golla's authority as a brother with the Missionaries of the Company of Mary to volunteer his services as a eucharistic minister in any way that the priest of the local church that he was attending at that moment, in any way that he might be of service?
>
> A: Just as anyone else in the congregation would be doing that.

(*Id.* at 19, 21). In other words, Father Considine testified, any duties Brother Golla performed or intended to perform at any given mass would not be done as a Brother, but "as a member of the

Catholic church." (*Id.* at 43).

This testimony does not change the court's ruling. Acting as a member of the Catholic Church was not "within the course and scope" of Golla's employment. The reason he gave Berry for driving to the Houston Catholic Church was consistent with Brother Golla acting as any Catholic Church member, not as an employee of the Missionaries. Brother Golla did not seek or obtain authorization from the Missionaries to carry out his stated intent to speak at the mass he was driving to attend, because that was outside the scope of his duties as a Brother. The fact that he was never told that he *could not* participate in mass or offer to help while on vacation or during personal travel does not make those actions authorized. Father Considine did not send Golla to Houston to perform any business for or on behalf of the Missionaries. Any involvement he had with the Catholic Church during that time was in his personal capacity. The motion for reconsideration is denied.

SIGNED on May 31, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge